UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERNARD J. SORRENTINO,


                              Plaintiff,

                                              <u>DECISION AND ORDER</u>

                                              05-CV-6144L

               v.

BARR LABORATORIES, INC.,


                              Defendant.
_____


        In *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 937 n. 5 (D.C.Cir. 1991), *cert. denied*, 504 U.S. 931 (1992), the Court of Appeals for the District of Columbia Circuit gave the "legal definition of chutzpah" as "a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan."  On a variation of that theme, this case presents a *pro se* plaintiff bringing a wrongful death suit for the loss of his wife, whom plaintiff was convicted of murdering in 2002.  Defendant, Barr Laboratories, Inc. ("Barr"), has moved for summary judgment.


                              **BACKGROUND**


        On March 16, 2002, plaintiff stabbed his wife to death in their home.  Dkt.#23-6 at 1, 51.

He was subsequently charged with second-degree murder.  At trial, his attorney presented a defense

of extreme emotional disturbance, based in part on plaintiff's use of the drug fluoxetine (more commonly known as Prozac), which had been prescribed for him by a physician to treat plaintiff's depression, along with "various [other] drugs," including codeine that plaintiff "ha[d] left over from various operations," and "a couple of glasses of wine" on the night of the murder.  Trial Transcript ("Tr.") (Dkt. #23-6) at 937-38.

In support of that defense, plaintiff's attorney presented expert testimony by a forensic psychologist and by a physician, both of whom testified about the effects on plaintiff of his misuse of fluoxetine (by taking it intermittently, in various doses, rather than a constant dosage at regular intervals), combined with the other drugs and alcohol that he had ingested on the day of the homicide.  Tr. at 963-1020.  The trial judge also instructed the jury on the affirmative defense of extreme emotional disturbance, which under New York law would have reduced plaintiff's crime to first-degree manslaughter if the jury found that plaintiff had "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse ... ."  N.Y. Penal L. § 125.25(1)(a).  Tr. at 1289-92.

The jury convicted plaintiff of second-degree murder on December 12, 2002.  Tr. at 1334; Certificate of Conviction (Dkt. #23-7).  In so doing, the jury expressly found that plaintiff had not proved by a preponderance of the evidence that he had suffered from extreme emotional disturbance at the time of his wife's death.  Tr. at 1334.  Plaintiff's conviction was affirmed on appeal.  *See People v. Sorrentino*, 12 A.D.3d 1197 (4th Dep't), *leave to appeal denied*, 4 N.Y.3d 748 (2004).

Plaintiff brought this action in June 2004.  The complaint, which was filed in state court and removed to federal court based on diversity jurisdiction under 28 U.S.C. § 1332, alleges that Barr

was the manufacturer of the fluoxetine that plaintiff was taking at the time of his wife's murder.[1]

Plaintiff alleges that among the side effects of fluoxetine are suicidal tendencies, aggression, and

violent behavior.  Plaintiff alleges that Barr knew about these side effects, but did not warn the

public about them.  Plaintiff also alleges that his "wife of eighteen years Angela Sorrentino was

stabbed by Bernard Sorrentino due to [plaintiff's] taking Barr labratories [sic] drug (Fluoxetine.)."

Complaint at 2.

In this lawsuit, plaintiff asserts a claim against Barr for product liability based on Barr's

failure to warn of the side effects of fluoxetine.  Although the nature of his claimed damages is not

exactly clear, it appears that he seeks damages for his current imprisonment, as well as damages for

his children "for the loss of their Mother and Father."  Complaint at 4.

## DISCUSSION

### I. Collateral Estoppel

Barr moves for summary judgment on the ground that plaintiff is collaterally estopped from

relitigating the issue of fluoxetine's role in his wife's death, based on the criminal jury's rejection

of his extreme-emotional-disturbance defense.  Under New York law, which governs this diversity

action, the doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action

or proceeding an issue clearly raised in a prior action or proceeding and decided against that party

---

[1]"Prozac" is a registered trademark of Eli Lilly and Company.  *See*
http://tess2.uspto.gov/bin/showfield?f=doc&state=eac3v0.2.10.  The drug that plaintiff was
taking was apparently a generic equivalent of Prozac sold by Barr.

or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984). It is well settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983. *See Allen v. McCurry*, 449 U.S. 90 (1980). It is equally clear that a prior criminal conviction can give rise to collateral estoppel in a subsequent civil action involving some of the same factual issues. *See, e.g., Anonymous v. Dobbs Ferry Union Free School Dist.*, 19 A.D.2d 522 (2d Dep't 2005); *In re Nora M.*, 300 A.D.2d 922, 923 (3d Dep't 2002).

"There are two requirements for the application of collateral estoppel to an issue: (1) there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (internal quotations and citations omitted); *see also Schwartz v. Public Adm'r*, 24 N.Y.2d 65 (1969). The party seeking the benefit of collateral estoppel bears the burden of proving there is an identity of issue, whereas the party contesting its application bears the burden of proving that he did not have a full and fair opportunity to litigate the claims in the prior action. *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991); *D'Andrea v. Hulton*, 81 F.Supp.2d 440, 443 (W.D.N.Y. 1999).

To show an identity of issue, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein ... and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first." *Ryan*, 62 N.Y.2d at 500-01 (internal citations omitted). To determine whether the first action provided a full and fair opportunity to

litigate requires consideration of the "nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation."  *Ryan*, 62 N.Y.2d at 501.

Applying these factors here, I find that collateral estoppel precludes plaintiff from litigating his product liability claim against Barr, since the relevant factual issues were fully litigated–adversely to plaintiff–at his criminal trial.  Defendant is therefore entitled to summary judgment.

In opposition to Barr's motion, plaintiff contends that he did not have a full and fair opportunity at his criminal trial to litigate some of the issues raised in this lawsuit, such as the alleged lack or inadequacy of Barr's warnings about fluoxetine's side effects.  The point, however, is that at his criminal trial, plaintiff fully litigated (and obviously had a great incentive to litigate) the issue of whether his use of fluoxetine was directly responsible for his wife's death by causing him to suffer from an extreme emotional disturbance.  The jury's finding that plaintiff did not suffer from an extreme emotional disturbance effectively answered that question in the negative.[2]  Plaintiff is therefore barred from repackaging his unsuccessful criminal defense in the guise of a product liability claim.[3]

---

[2]In addition, the state court instructed the jury that plaintiff had to establish his defense of extreme emotional disturbance by a preponderance of the evidence, the same burden that plaintiff would have here were this case to go to trial.  Tr. at 1291.

[3]In part, the flaw in plaintiff's argument stems from his confusion between collateral estoppel (issue preclusion) and res judicata (claim preclusion).  It is true that the latter doctrine would not operate to bar plaintiff's claims here, since Barr was not a party to the criminal action,

(continued...)

**II. New York Public Policy Barring Persons from Profiting from Their Own Crimes**

I also agree with defendant that plaintiff is barred from seeking damages stemming from his wife's death, under New York's public policy against allowing individuals to profit from their own wrongdoing. *See*, *e.g.*, *Manning v. Brown*, 91 N.Y.2d 116, 120-22 (1997) (plaintiff's knowing participation in the unauthorized use of a motor vehicle was a "serious violation of the law" that precluded her suit against her accomplice driver even though the driver negligently caused the accident and the plaintiff's injuries); *Barker v. Kallash*, 63 N.Y.2d 19, 28-29 (1984) (plaintiff could not seek damages against defendants who gave him gunpowder to make a pipe bomb, which severely injured plaintiff when it exploded as plaintiff was making it, because plaintiff's own wrong–making a pipe bomb–constituted a serious violation of law that transcended contributory negligence and comparative fault); *Riggs v. Palmer*, 115 N.Y. 506, 511-512 (1889) (stating principle that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime"); *see also Alami v. Volkswagen of America, Inc.*, 97 N.Y.2d 281, 287 (2002) (recognizing public policy against permitting judicial relief to those injured in the course of committing a serious criminal act, but refusing to extend policy "beyond claims where the parties to the suit *were involved in the underlying criminal conduct* ...") (emphasis added).

---

[3](...continued)
and no product liability *claim* against Barr was or could have been asserted by plaintiff in that action. *See In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). The factual *issue* of whether fluoxetine caused plaintiff to kill his wife was fully litigated, however, and further litigation of that issue is barred under the doctrine of collateral estoppel.

Plaintiff states that, in his belief, "there were two victims that night [of the murder], (my wife and myself)." Dkt. #34-1 at 3. That may be his sincere belief, but a criminal jury found otherwise. Under New York public policy, therefore, this action must be dismissed.[4]

### III. Plaintiff's Motion to Change the Administrator of Decedent's Estate

Barr also moves for summary judgment on the ground that plaintiff lacks standing to bring a wrongful death action, because plaintiff is not the personal representative of decedent's estate. Decedent's mother, Alta Vero, is the representative of the estate. *See* Dkt. #23-8. In response, plaintiff has moved for an order removing Vero as guardian for plaintiff's minor children and removing her as administrator of decedent's estate, and replacing her in both capacities with plaintiff's elder son, Bernard Sorrentino, Jr.

Plaintiff's motion is denied. First, this Court lacks jurisdiction to grant plaintiff the relief he seeks. Even if the Court had jurisdiction, though, I would deny plaintiff's motion as futile, since plaintiff's claims would still be subject to dismissal for the reasons stated above.[5]

---

[4]As stated earlier, even if the jury had found that plaintiff had proven his defense of extreme emotional disturbance, that would simply have reduced the conviction to manslaughter in the first degree. *See* Tr. at 1292, 1334; N.Y. Penal L. §§ 125.25(1)(a). I see no reason why his claims here would not still be barred by New York public policy.

[5]Plaintiff has filed a number of other motions for discovery, for extensions of time, etc. Those motions are all denied. It appears that plaintiff has, in fact, had all the time that he needed to respond to defendant's summary judgment motion. Plaintiff's most recent request for an extension of time was made on September 26, 2005, and granted by the Court on October 5. In addition, although plaintiff has made a blanket request for "[c]opies of any and all records and documents that defendants are required by law to turn over to plaintiff," Dkt. #15, there is no indication that plaintiff lacks any records, documents, or other existing evidence that could possibly alter the outcome of this Decision and Order.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #23) is granted, and the complaint is dismissed.

Plaintiff's motions for discovery (Dkt. #15), for appointment of counsel (Dkt. #16), for leave to amend the complaint to add Eli Lilly and Company as a defendant (Dkt. #19), to compel discovery (Dkt. #20), for an extension of time (Dkt. #25), to compel discovery (Dkt. #29), for appointment of counsel (Dkt. #39), for an extension of time (Dkt. #44) and to remove Alta Vero as administrator (Dkt. #46) are denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
   November 7, 2005.

.